## EUSTIS *v.* BOLLES.

ERROR TO THE SUPREME JUDICIAL COURT OF THE COMMONWEALTH OF MASSACHUSETTS.

No. 74. Argued November 9, 10, 1893. — Decided November 20, 1893.

The decision by the Supreme Judicial Court of Massachusetts that a creditor of an insolvent debtor, who proves his debt in insolvency, and accepts the benefit of proceedings under the state statute of May 13, 1884, entitled "An act to provide for composition with creditors in

insolvency," Mass. Stats. 1884, c. 236, and the act amending the same, thereby waives any right which he might otherwise have had to object to the validity of the composition statutes, as impairing the obligation of contracts, presents no Federal question for review by this court.

To give this court jurisdiction of a writ of error to a state court, it must appear affirmatively, not only that a Federal question was presented for decision by the state court, but that its decision was necessary to the determination of the cause, and that it was decided adversely to the party claiming a right under the Federal laws or Constitution, or that the judgment, as rendered, could not have been given without deciding it.

Where the record discloses that, if a question has been raised and decided adversely to a party claiming the benefit of a provision of the Constitution or laws of the United States, another question, not Federal, has been also raised and decided against such party, and the decision of the latter question is sufficient, notwithstanding the Federal question, to sustain the judgment, this court will not review the judgment.

When this court, in a case brought here by writ of error to a state court, finds it unnecessary to decide any Federal question, its logical course is to dismiss the writ of error.

ON February 14, 1887, Charles H. Bolles and George F. Wilde, as surviving members of the firm of B. Collender & Company, filed a petition in insolvency in the insolvency court within and for the county of Suffolk, State of Massachusetts. On February 16, 1887, they filed in the same insolvency court a written proposal for composition with their copartnership creditors, under the so-called "composition acts" of 1884 and 1885, and they therein proposed to pay fifty cents on the dollar of their debts in money. On February 24, 1887, the first meetings of creditors were held in both the ordinary insolvency proceedings which were begun on February 14, and in the composition proceedings which were begun on February 16, and William T. Eustis proved a claim on a promissory note for $16,000, dated January 1, 1880, and due on demand, and voted for assignees in the ordinary insolvency proceeding; but the record does not show that he proved his claim in the composition proceedings. On March 10, 1887, an adjourned hearing in the composition proceedings was held in the insolvency court, to determine whether said proposal for composition should be confirmed; and Eustis appeared by counsel at said hearing and opposed the confirmation of said

proposal and the granting of a discharge to said Bolles and Wilde, on the ground that the said composition acts were unconstitutional and void. Eustis also filed written objections to the discharge of the debtors, alleging that the composition acts, having been passed after the execution and delivery of the note held by Eustis, were in violation of that part of the Constitution of the United States which forbids any State to pass a law impairing the obligation of contracts.

Bolles and Wilde, having filed in the insolvency court the written assent of a majority in number and value of their creditors who had proved their claims, and having deposited in court one-half the aggregate amount of their debts, were granted by the court, on March 31, 1887, certificates of discharge under and in pursuance of the composition acts. On May 14, 1887, Eustis received the sum of $8020, being one-half the amount of his claim, and signed a receipt therefor, reciting that it was "according to the composition confirmed by the court in the case." All the other creditors of said Bolles and Wilde accepted the offer, and signed similar receipts.

Subsequently, in July, 1887, Eustis brought an action in the Supreme Judicial Court against Bolles and Wilde, wherein he sought to recover the balance of his note remaining unpaid after the receipt of the one-half received under the insolvency proceedings. The defendants pleaded the proceedings in insolvency, their offer of composition, its acceptance by the majority in number and value of their creditors, their discharge, and the acceptance by Eustis of the amount coming to him under the offer of composition, and to this answer the plaintiff demurred. Subsequently the death of William T. Eustis was suggested, and Isabel B. Eustis and Florence D. Eustis were permitted to appear and prosecute said action as executrices.

The trial court, which overruled the demurrer, made a finding of facts, and reported the case for the determination of the full court. The Supreme Judicial Court was of opinion that Eustis, by accepting the benefit of the composition, had waived any right that he might otherwise have had to object

to the validity of the composition statutes as impairing the obligation of contracts. 146 Mass. 413. Final judgment. was entered for the defendants on November 26, 1889, and on January 29, 1890, a writ of error was allowed by the Chief Justice of the Supreme Judicial Court to this court.

*Mr. Conrad Reno*, (with whom was *Mr. William A. Macleod* on the brief,) for plaintiffs in error.

I. This court has jurisdiction. The question of Federal law was specially set up or claimed by the original plaintiff in the proper way and at the right time. When a state court of last resort justifies its refusal, neglect or failure to decide in favor of a Federal right, title, privilege, or immunity which is specially set up or claimed in the proper way and at the right time, by the application of some general rule of law to the facts of the case, such as waiver, estoppel, or acquiescence, its judgment is reviewable by this court on writ of error. If, in the opinion of this court, the justification assigned by the state court is well grounded, the state judgment will be affirmed. But if, in the opinion of this court, the justification is not well grounded, the aggrieved party is entitled to the benefit of the Federal law, and the state judgment will be reversed if a correct decision of the Federal question requires such reversal. *Given* v. *Wright*, 117 U. S. 648, 655–656; *Huntington* v. *Attrill*, 146 U. S. 657; *Des Moines Navigation Co.* v. *Iowa Homestead Co.*, 123 U. S. 552; *Green* v. *Van Buskirk*, 5 Wall. 307, and 7 Wall. 139; *Railroad Co.* v. *Koontz*, 104 U. S. 5; *Renaud* v. *Abbott*, 116 U. S. 277; *Chapman* v. *Goodnow*, 123 U. S. 540, 548.

II. A creditor whose demand is saved from the operation of a state statute or of a state decree by the Constitution of the United States does not waive the benefit of this constitutional immunity by accepting the part of his demand which the state statute or decree says shall constitute full satisfaction; and, there being no other defence, he is entitled to recover the unpaid balance of the debt. *Embry* v. *Palmer*, 107 U. S. 3; *Kimberly* v. *Ely*, 6 Pick. 440; *Montague* v. *Massey*, 76 Vir-

ginia, 307; *Woodbridge* v. *Wright*, 3 Connecticut, 523; *Doug-lass* v. *Craig*, 13 S. C. 371. See also *Insurance Co.* v. *Morse*, 20 Wall. 445 (reversing *Morse* v. *Home Ins. Co.*, 30 Wisconsin, 496); *Barron* v. *Burnside*, 121 U. S. 186; *Railroad Company* v. *Maryland*, 21 Wall. 456.

It appears that, during the entire pendency of the composition proceedings, the plaintiff's whole course of conduct was one of opposition and protest. He declined to accept the offer when first made, and he opposed the granting of the discharges. It was not until after the court had granted certificates of discharge that the plaintiff accepted a dividend.

It is well settled that a creditor who accepts the amount of a judgment or decree for less than he claims to be due is not thereby estopped to show that the judgment or decree is erroneous or void; nor does he thereby waive any of his former rights. *Erwin* v. *Lowry*, 7 How. 172, 183–184; *Planters' Bank* v. *Union Bank*, 16 Wall. 483, 497; *Reynes* v. *Dumont*, 130 U. S. 354; *Bowers* v. *Hammond*, 139 Mass. 360; *Catlin* v. *Wheeler*, 49 Wisconsin, 507; *Morriss* v. *Garland*, 78 Virginia, 215, 234; *Chicago & Eastern Illinois Railway* v. *Kamman*, 119 Illinois, 362.

III. The composition acts so affected the plaintiff's remedy as it subsisted in the State when and where the contract was made and where it was to be performed, as substantially to impair and lessen the value of the contract; and, therefore, they impair the obligation of the contract in suit and are void. *Edwards* v. *Kearzey*, 96 U. S. 595; *Bronson* v. *Kinzie*, 1 How. 311, 317; *Curran* v. *Arkansas*, 15 How. 304, 309–310; *Hawthorne* v. *Calef*, 2 Wall. 10; *Von Hoffman* v. *Quincy*, 4 Wall. 535, 553; *Walker* v. *Whitehead*, 16 Wall. 314; *Louisiana* v. *New Orleans*, 102 U. S. 203, 206; *Hartman* v. *Greenhow*, 102 U. S. 672; *Matter of Wendell*, 19 Johns. 153.

The single defence to this action is the defendants' discharge under and pursuant to the "composition acts" of Massachusetts, being Acts of 1884, 195, c. 236, and Acts of 1885, 811, c. 353. The single reply of the plaintiffs is that the composition acts are unconstitutional and void, chiefly on the ground that they impair the obligation of the contract in suit.

A subsequent statute, giving greater facilities to the debtor in obtaining his discharge in an insolvency court than were given him by the law in force when and where the contract was made, or which authorizes a discharge from a preëxisting contract, in a case where such a discharge could not previously have been granted, impairs the obligation of the contract, and is unconstitutional and void; and a discharge obtained under such a statute is no defence to an action on the claim. *Matter of Wendell,* 19 Johns. 153; *Salters* v. *Tobias,* 3 Paige, 338, 344; *Wyman* v. *Mitchell,* 1 Cowen, 316; *Bryar* v. *Willcocks,* 3 Cowen, 159; *Hundley* v. *Chaney,* 65 California, 363.

*Mr. Edwin B. Hale,* (with whom was *Mr. James B. Richardson* on the brief,) for defendants in error.

MR. JUSTICE SHIRAS, after stating the case as above reported, delivered the opinion of the court.

It is settled law that, to give this court jurisdiction of a writ of error to a state court, it must appear affirmatively, not only that a Federal question was presented for decision by the state court, but that its decision was necessary to the determination of the cause, and that it was actually decided adversely to the party claiming a right under the Federal laws or Constitution, or that the judgment as rendered could not have been given without deciding it. *Murdock* v. *Memphis,* 20 Wall. 590; *Cook County* v. *Calumet & Chicago Canal Co.,* 138 U. S. 635.

It is likewise settled law that, where the record discloses that if a question has been raised and decided adversely to a party claiming the benefit of a provision of the Constitution or laws of the United States, another question, not Federal, has been also raised and decided against such party, and the decision of the latter question is sufficient, notwithstanding the Federal question, to sustain the judgment, this court will not review the judgment.

In *Klinger* v. *Missouri,* 13 Wall. 257, 263, this court, through Mr. Justice Bradley, said : " The rules which govern

the action of this court in cases of this sort are well settled. Where it appears by the record that the judgment of the state court might have been based either upon a law which would raise a question of repugnancy to the Constitution, laws, or treaties of the United States, or upon some other independent ground, and it appears that the court did, in fact, base its judgment on such independent ground and not on the law raising the Federal question, this court will not take jurisdiction of the case, even though it might think the position of the state court an unsound one. But where it does not appear on which of the two grounds the judgment was based, then, if the independent ground on which it might have been based was a good and valid one, sufficient of itself to sustain the judgment, this court will not assume jurisdiction of the case; but if such independent ground was not a good and valid one, it will be presumed that the state court based its judgment on the law raising the Federal question, and this court will then take jurisdiction."

In *Johnson* v. *Risk*, 137 U. S. 300, the record showed that, in the Supreme Court of Tennessee, two grounds of defence had been urged, one of which involved the construction of the provisions of the Federal bankrupt act of March 2, 1867, and the other the bar of the statute of limitations of the State of Tennessee; and this court held that "where, in an action pending in a state court, two grounds of defence are interposed, each broad enough to defeat a recovery, and only one of them involves a Federal question, and judgment passes for the defendant, the record must show, in order to justify a writ of error from this court, that the judgment was rested upon the disposition of the Federal question; and if this does not affirmatively appear, the writ of error will be dismissed, unless the defence which does not involve a Federal question is so palpably unfounded that it cannot be presumed to have been entertained by the state court."

Different phases of the question were presented, and the same conclusion was reached in *Murray* v. *Charleston*, 96 U. S. 432, 441; *Jenkins* v. *Lœwenthal*, 110 U. S. 222; *Hale* v. *Akers*, 132 U. S. 554.

In this state of the law we are met, at the threshold in the present case, with the question whether the record discloses that the Supreme Judicial Court of Massachusetts decided adversely to the plaintiffs in error any claim arising under the Constitution or laws of the United States, or whether the judgment of that court was placed on another ground, not involving Federal law, and sufficient of itself to sustain the judgment.

The defendants in the trial court depended on a discharge obtained by them under regular proceedings, under the insolvency statutes of Massachusetts. This defence the plaintiffs met by alleging that the statutes, under which the defendants had procured their discharge, had been enacted after the promissory note sued on had been executed and delivered, and that, to give effect to a discharge obtained under such subsequent laws, would impair the obligation of a contract, within the meaning of the Constitution of the United States. Upon such a state of facts, it is plain that a Federal question, decisive of the case, was presented, and that if the judgment of the Supreme Judicial Court of Massachusetts adjudged that question adversely to the plaintiffs, it would be the duty of this court to consider the soundness of such a judgment.

The record, however, further discloses that William. T. Eustis, represented in this court by his executors, had accepted and receipted for the money which had been awarded him, as his portion, under the insolvency proceedings, and that the court below, conceding that his cause of action could not be taken away from him, without his consent, by proceedings under statutes of insolvency passed subsequently to the vesting of his rights, held that the action of Eustis, in so accepting and receipting for his dividend in the insolvency proceedings, was a waiver of his right to object to the validity of the insolvency statutes, and that, accordingly, the defendants were entitled to the judgment.

The view of the court was that, when the composition was confirmed, Eustis was put to his election whether he would avail himself of the composition offer, or would reject it and

rely upon his right to enforce his debt against his debtors notwithstanding their discharge.

In its discussion of this question the court below cited and claimed to follow the decision of this court in the case of *Clay* v. *Smith*, 3 Pet. 411, where it was held that the plaintiff, by proving his debt and taking a dividend under the bankrupt laws of Louisiana, waived his right to object that the law did not constitutionally apply to his debt, he being a creditor residing in another State. But in deciding that it was competent for Eustis to waive his legal rights, and that accepting his dividend under the insolvency proceedings was such a waiver, the court below did not decide a Federal question. Whether that view of the case was sound or not, it is not for us to inquire. It was broad enough, in itself, to support the final judgment, without reference to the Federal question.

The case of *Beaupré* v. *Noyes*, 138 U. S. 397, 401, seems to cover the present one. There the plaintiff in error complained that an assignment of property, not accompanied by delivery and an actual change of possession, was, as to him, fraudulent; and as his contention to that effect was denied to him, he claimed he was denied a right arising under an authority exercised under the United States. But this court said: "Whether the state court so interpreted the territorial statute as to deny such right to the plaintiffs in error, we need not inquire, for it proceeded, in part, upon another and distinct ground, not involving any Federal question, and sufficient, in itself, to maintain the judgment, without reference to that question. That ground is that there was evidence tending to show that the defendants acquiesced in and assented to all that was done, and waived any irregularity in the mode in which the assignee conducted the business; and that the question, whether the defendants so acquiesced and assented with knowledge of all the facts, and thereby waived their right to treat the assignment as fraudulent, was properly submitted to the jury. The state court evidently intended to hold that, even if the assignment was originally fraudulent, as against the creditors, by reason

of Young," the assignor, remaining in apparent possession, "it was competent for the plaintiffs in error to waive the fraud and treat the assignment as valid. . . . That view does not involve a Federal question. Whether sound or not, we do not inquire. It is broad enough, in itself, to support the final judgment, without reference to the Federal question."

Having reached the conclusion that we are not called upon to determine any Federal question, nor to consider whether the state court was right or wrong in its decision of the other question in the case, it only remains to inquire whether that conclusion requires us to affirm the judgment of the court below, or to dismiss the writ of error. An examination of our records will show that, in similar cases, this court has sometimes affirmed the judgment of the court below, and sometimes has dismissed the writ of error. This discrepancy may have originated in a difference of views as to the precise scope of the questions presented. However that may be, we think that, when we find it unnecessary to decide any Federal question, and when the state court has based its decision on a local or state question, our logical course is to dismiss the writ of error. This was the judgment pronounced in *Klinger* v. *Missouri*, 13 Wall. 257; *N. O. Waterworks* v. *Louisiana Sugar Co.*, 125 U. S. 18; *Kreigher* v. *Shelby Railroad*, 125 U. S. 39; *De Saussure* v. *Gaillard*, 127 U. S. 216; *Hale* v. *Akers*, 132 U. S. 554; *Hopkins* v. *McLure*, 133 U. S. 380; *Johnson* v. *Risk*, 137 U. S. 300, 307; and in numerous other cases which it is unnecessary to cite.

Accordingly, our judgment is that, in the present case, the writ of error must be

*Dismissed.*